**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Troy Shumate,<br><br>    Plaintiff,<br><br>v.<br><br>Route1 Incorporated, *et al.*,<br><br>    Defendants. | No. CV-22-01786-PHX-JJT<br><br>**ORDER** |

At issue is Defendants Route1, Inc. and Tony Busseri's Motion for Summary Judgment (Doc. 40, MSJ) supported by a Statement of Facts (Doc. 41, DSOF), to which Plaintiff Troy Shumate filed a Response (Doc. 42, Resp.) supported by an Amended Controverting Statement of Facts (Doc. 49, PSOF), and Defendants filed a Reply (Doc. 47, Reply) and, with leave of Court, a Supplemental Reply (Doc. 50, Supp. Reply). The Court resolves Defendants' Motion without oral argument. LRCiv 7.2(f).

**I.    BACKGROUND**

Route1 developed and sells a product that provides secure remote access to an organization's digital resources using robust identity management technology. The company has also developed other security-related enterprise management tools, including a security application that manages U.S. government credentials and a product used in data acquisition and analytics. Mr. Busseri is Route1's President and Chief Executive Officer (CEO).

In 2021, Route1 offered Plaintiff the position of Corporate Controller with a start date of July 12, 2021. (DSOF ¶ 10.) When that day arrived, Plaintiff did not show up for work. (DSOF ¶ 11.) A little before 10:00 a.m., Mr. Busseri sent Plaintiff an e-mail to check on him but received no response during the workday. (DSOF ¶ 13.) At 6:39 p.m., Mr. Busseri received a message from Plaintiff that said his wife and children had been in "a head on collision at Signal Butte and the 60" and his wife was "airlifted to the hospital and is out of surgery and stable now." (DSOF ¶ 14.)

Route1 would later learn that Plaintiff had lied; his family had not been in a car accident that day. In fact, he had been pulled over for speeding on his way to work and was arrested in connection with charges brought against him when his previous employer, PFG Funding, accused him of forgery, for which he ultimately participated in the Maricopa County Attorney's Felony Diversion Program. (DSOF ¶¶ 45–47.) Plaintiff never listed PFG Funding as his previous employer in the Route1 job application. (DSOF ¶ 48.) In addition, Route1 also learned later that Plaintiff had been terminated from his next previous job for physical violence toward a co-worker and failed to report that to Route1 in the job application process also. (DSOF ¶ 50.) Mr. Busseri maintains that Route1 would not have hired (or retained) Plaintiff had it known about these three lies—one explicit and two by omission—and indeed Mr. Busseri avers that Route1 neither would nor could have had Plaintiff as its Corporate Controller had it known that Plaintiff had been charged with two counts of forgery in connection with the mishandling of money. (DSOF ¶ 49.)

When Plaintiff did not show up to work on July 12, 2021, Route1 offered the Corporate Controller position to another candidate, Monica Spivey. (DSOF ¶ 12.) Subsequently relying on Plaintiff's fabricated story that his family was in a serious automobile accident to excuse his unexplained absence from his first day of work, Route1 allowed him to start work anyway, and the Controller duties were split between him and Ms. Spivey. (DSOF ¶ 15.) Later that month, Route1 made Plaintiff Vice President (VP) of Finance. (DSOF ¶ 17.)

In his role, Plaintiff was responsible for Route1's Q2 2021 financial statements as part of its reporting requirements as a publicly traded company. (DSOF ¶¶ 21, 23.) Because of the import of the statements and the fact that Plaintiff was new to the company, Peter Chodos—Route1's VP and Chief Financial Officer (CFO)—assisted Plaintiff. (DSOF ¶ 23.) Mr. Busseri avers that Plaintiff "struggled with his responsibilities," even though he had stated in his interview with Route1 that he had strong accounting and general ledger software expertise and could deliver timely draft financial statements. (DSOF ¶¶ 22, 24.) Plaintiff failed to meet the August 15, 2021, deadline to produce a draft Q2 financial statement to Mr. Chodos. (DSOF ¶ 24.) That day, a Sunday, Mr. Busseri worked in the office together with Plaintiff on the draft financial statement. (DSOF ¶ 25.) Later in the day, Plaintiff told Mr. Busseri he was not feeling well, and he would later disclose he suffered a "hypertensive crisis" that evening. (DSOF ¶ 28; Ex. G.) Plaintiff contacted Mr. Chodos the next day to inform him he was not feeling well, needed rest, and had made a doctor's appointment for two days later. (DSOF ¶ 30.) With Route1's approval, Plaintiff was on paid sick leave on August 16 and 17, 2021. (DSOF ¶ 32.)

On August 18, 2021, Plaintiff informed Route1 that he could return to work the next day but needed to reduce his workload to address "stress and anxiety"; his healthcare provider wrote a note saying Plaintiff was limited to "no strenuous activity." (DSOF ¶ 33.) The next day, Plaintiff and Mr. Busseri met, and they agreed for Plaintiff to resume his role of Corporate Controller instead of VP of Finance for the time being to reduce Plaintiff's workload and stress; Plaintiff later affirmed in writing that he agreed to "continue at [his] initial lower salary." (DSOF ¶ 34; Ex. G.) Route1 then needed another senior finance professional to help prepare the draft financial statements, and it offered that job to Travis Campbell on August 20, 2021. (DSOF ¶ 36.)

Plaintiff learned of Mr. Campbell's hiring and indicated he assumed Mr. Campbell was being hired to replace him. (DSOF ¶ 40; Ex. G.) On August 22, 2021, Plaintiff sent an e-mail to Route1's Board of Directors stating Mr. Busseri had created a "hostile and toxic work environment" and Plaintiff had worked "26 days straight of 14–16 hour days with

only one day off." (DSOF Ex. G.) He stated he had not had a heart attack on August 15, but rather his "blood pressure was in Hypertensive Crisis," and he is otherwise "healthy, a former National Champion swimmer, with no known past health issues at all." (DSOF Ex. G.) Plaintiff stated:

> This emergency coincided with the compiling of the Quarter 2 financials that I couldn't complete as I was required to see a cardiologist within 48 hours and primary care physician to complete the orders for a full workup as well as advice to rest. (Travis Campbell was hired to complete the rest of my work . . . ). The cardiologist said this level of stress and anxiety along with unsustainable hours were the direct result [sic] of my recent health issues.

(DSOF Ex. G.) Plaintiff stated he had researched Mr. Busseri's management style and believed "this behavior is an ugly pattern that will not change as it has been present for years." (DSOF Ex. G.) Plaintiff said, "I feel I cannot return to the office under the conditions that are constantly hostile and toxic as my health and personal safety are at risk while Mr. Busseri is President and CEO of Route1 Inc." (DSOF Ex. G.) Because Route1 did not intend to terminate Mr. Busseri as its President and CEO, it took Plaintiff's letter as his resignation and terminated his employment on August 23, 2021. (DSOF ¶¶ 39–40.)

On January 24, 2022, after Plaintiff's termination, Route1 discovered Plaintiff had forwarded highly confidential financial information to his private e-mail address and to his father without authorization in contravention of Route1's confidentiality policies—another terminable offense. (DSOF ¶¶ 41–43.)

Plaintiff filed a charge of unlawful termination based on disability discrimination with the Arizona Civil Rights Division on September 21, 2021 and received a notice of his right to sue on June 17, 2022. (Doc. 1-3, Compl. ¶ 41.) He filed the present lawsuit in state court on September 2, 2022, raising a claim of discrimination under Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(a), and a claim for earned paid sick time under the Arizona Minimum Wage Act (AMWA), A.R.S. §§ 23-364(B), (G).

1  (Compl. ¶¶ 29–44.) Defendants removed the case to this Court on October 17, 2022 (Doc. 1) and now move for summary judgment.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232. When the moving party does not bear the ultimate burden of proof, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id.* at 1103. Summary judgment is appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, as long as it is supported by affidavits or other evidentiary material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest

on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." (citation omitted)).

**III.   ANALYSIS**

  **A.   Disability Discrimination**

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a *prima facie* case of disability discrimination, a plaintiff must show he (1) is disabled; (2) is a qualified individual; and (3) has suffered an adverse employment action because of his disability. *Mayo v. PCC Structurals, Inc.*, 795 F.3d 941, 944 (9th Cir. 2015). A condition or impairment is a "disability" in the context of the ADA if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(ii).

  Defendants argue that Plaintiff has not provided sufficient evidence from which a reasonable jury could find he was disabled, and thus entitled to the protections of the ADA, at the time he was employed by Route1. (MSJ at 11–13; Reply at 6–7; Supp. Reply at 3–4.) The Court agrees. The only evidence Plaintiff presents to support his claim of a disability is a single episode of "blood pressure in hypertensive crisis" that he suffered after long hours at work and the stress and anxiety associated with not meeting a work deadline. But simply because a person could not meet the requirements of a demanding job without suffering a single incident of stress and anxiety does not mean the person is disabled under the ADA. Plaintiff has offered no other evidence, medical or otherwise, of a condition that substantially limits his ability to work or perform any other major life activity. He testified that he has never been in "hypertensive crisis" before or since the single episode on

August 15, 2021. (DSOF ¶¶ 29, 38; PSOF ¶ 55.) He also stated he has no limitations in his ability to work and is "healthy." (DSOF ¶¶ 29, 38.) Because Plaintiff has produced no evidence of substantial limitation before or since the single episode on August 15, 2021, he has failed to raise a genuine issue as to whether he is disabled, and Defendants are entitled to summary judgment on Plaintiff's ADA claim.

Even if Plaintiff had shown he was disabled on account of a single hypertensive event, he has also failed to show he suffered the adverse employment action of termination because of the alleged disability. In his August 22, 2021 e-mail to the Board of Directors, Plaintiff effectively resigned from his position by stating he would not return to work if Mr. Busseri remained in his position. (DSOF Ex. G.) In the absence of a finding of constructive discharge, voluntary resignation is not the same as termination. "[C]onstructive discharge occurs when the working conditions deteriorate, <u>as a result of discrimination</u>, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (quoting *Brooks v. City of San Mateo,* 229 F.3d 917, 930 (9th Cir. 2000)) (emphasis added). The constructive discharge inquiry is objective. *See id*. at 1184–85. It cannot be based upon a plaintiff's preference for one position over another and does not turn on whether the plaintiff subjectively viewed his or her work conditions as "a career ender" or "egregious." *See id*. at 1184–85 (no constructive discharge when plaintiff demoted to non-supervisory position and reassigned to another state away from family). In addition, "[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Cecala v. Newman*, 532 F. Supp. 2d 1118, 1168 (D. Ariz. 2007). The Ninth Circuit has "set the bar high for a claim of constructive discharge because federal antidiscrimination policies are better served when the employee and employer attack discrimination within their existing employment relationship, rather than

when the employee walks away and then later litigates whether [his or her] employment situation was intolerable." *Poland*, 494 F.3d at 1184.

Plaintiff's reason for not returning to work, as stated in his letter, was not discriminatory conduct based on Plaintiff's alleged disability. Plaintiff made it explicit that he would not work with Mr. Busseri because of "hostile and toxic" work conditions Plaintiff says Mr. Busseri created for the entire office staff. (DSOF Ex. G.) Those conditions pre-dated Plaintiff's single hypertensive incident. Even if a factfinder were to find that Mr. Busseri's conduct was hostile, the undisputed evidence shows he was equally hostile to everyone in the office, and no evidence shows the conduct arose as a discriminatory reaction to Plaintiff's alleged disability (or the taking of sick leave). As a result, although Plaintiff effectively resigned due to what he called a hostile work environment, it was not based on disability discrimination and thus was not constructive discharge. For this additional reason, Defendants are entitled to summary judgment on Plaintiff's ADA claim.

### B.      After-Acquired Evidence

Although Plaintiff's ADA claim fails, the Court will briefly address Defendants' argument that, had Plaintiff provided sufficient evidence to bring an ADA claim to trial, Plaintiff's damages would have been limited by the after-acquired evidence rule. Defendants point out that the uncontroverted evidence shows they would have justifiably fired Plaintiff based on evidence they acquired in October 2021—within two months after Plaintiff's resignation—that Plaintiff lied about why he missed his first day of work and failed to disclose his two prior jobs, in one of which he was charged with two counts of forgery in connection with the mishandling of money. (MSJ at 15–17; Reply at 10–11.)

"In such situations, backpay is calculated 'from the date of the unlawful discharge to the date the new information was discovered,'" and "reinstatement and front pay are unavailable." *E.E.O.C. v. High Speed Enter., Inc.*, 833 F. Supp. 2d 1153, 1160–61 (D. Ariz. 2011) (quoting *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 361–62 (1995)). The Court agrees with Defendants—and indeed Plaintiff concedes in his Response (Resp.

at 9–10)—that the damages would be so limited here, had Plaintiff's ADA claim survived summary judgment.

### C. AMWA Claim

In the Complaint, Plaintiff also brings a claim under the AMWA based on the proposition that Defendants terminated him on August 22, 2021 for taking sick days after his hypertensive incident on the evening of August 15, 2021. (Compl. ¶¶ 30–33.) As discussed *supra*, the uncontroverted evidence, by way of Plaintiff's own statements, shows that Plaintiff effectively resigned based on "hostile and toxic" work conditions Plaintiff states Mr. Busseri created for the entire office staff—conditions that arose before Plaintiff's hypertensive incident. (DSOF Ex. G.) No evidence shows Defendants fired Plaintiff for taking sick days after his hypertensive incident.[1] Accordingly, Defendants are entitled to summary judgment on Plaintiff's AMWA claim.

**IT IS THEREFORE ORDERED** granting Defendants' Motion for Summary Judgment (Doc. 40).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Defendants and close this case.

Dated this 21st day of August, 2024.

Honorable John J. Tuchi
United States District Judge

---

[1] If Defendants were not entitled to summary judgment on the AMWA claim, the after-acquired evidence rule would also limit Plaintiff's recoverable damages for such a claim, for the reasons stated *supra*.

- 9 -